[Cite as *In re T.M.*, 2020-Ohio-6950.]

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO

| | | |
|---|---|---|
| IN RE: T.M., A.B., T.D., I.B., and V.T. | : | APPEAL NOS. C-200009 |
| | | C-200012 |
| | : | TRIAL NO. F16-2211x |
| | : | *O P I N I O N.* |

Appeals From:  Hamilton County Juvenile Court

Judgment Appealed From Is:  Affirmed in Part, Reversed in Part, and Cause
Remanded

Date of Judgment Entry on Appeal:  December 30, 2020

*Phyllis Schiff*, for Appellant Mother,

*Celia Klug Weingartner*, for Mother's Guardian ad Litem,

*Joseph T. Deters*, Hamilton County Prosecuting Attorney, and *Nicholas C. Varney*, Assistant Prosecuting Attorney, for Appellee Hamilton County Department of Job and Family Services,

*Raymond T. Faller*, Hamilton County Public Defender, and *Belinda S. Gullette*, Assistant Public Defender, for Children's Guardian ad Litem.

**MOCK, Presiding Judge.**

{¶1}    The case began with an emergency removal of T.M., A.B., T.D., and I.B. from appellant mother's care because of an altercation that resulted in mother's arrest for child endangerment.  The case proceeded from that point.  After the initial complaint, the Hamilton County Department of Job and Family Services ("HCJFS") filed six amended complaints.  The final amended complaint was filed on May 1, 2018.  At a pretrial conference, the parties waived the right to have the adjudication and disposition hearings separately, agreeing to commence the disposition portion of the proceedings immediately after the adjudication was made in a single hearing.

{¶2}    The case was heard on June 18, 2018, and continued in progress.  On June 19 or 20, 2018, the matter was again continued in progress to August 9.  The hearing was continued in progress several additional times thereafter.   At the conclusion of the matter, the trial court awarded custody of T.D. to the child's father, T.M., A.B., and I.D. to the maternal aunt and uncle, and V.T. to the child's father.  V.T. was born after this matter commenced and was subsequently added to the litigation.  The trial court also suspended mother's visitation with T.M., A.B, and I.D., "subject to reconsideration upon the filing of a motion by mother or the Guardian appointed for said children." Both mother and her guardian ad litem now appeal that decision.

**Hearing was Timely**

{¶3}    In their first assignments of error, mother and mother's guardian argue that the trial court erred when it failed to dismiss the seventh amended complaint because the adjudication hearing was not held within 90 days.  R.C. 2151.35(B)(1) states that "[t]he dispositional hearing shall not be held more than ninety days after the date on which the complaint in the case was filed." If the dispositional hearing is not held within 90 days of the filing of the complaint, "the

court, on its own motion or the motion of any party or the guardian ad litem of the child, shall dismiss the complaint without prejudice." R.C. 2151.35(B)(1). Earlier this year, the Ohio Supreme Court held that this statutory deadline is mandatory. *In re K.M.*, 159 Ohio St.3d 544, 2020-Ohio-995, 152 N.E.3d 245, ¶ 31. The court further concluded that this deadline cannot be found to have been implicitly waived by the parties. *Id.* at ¶ 26.

{¶4} HCJFS and the guardian ad litem for the children argue that the trial court did begin the dispositional hearing on time, and that the hearing was continued in progress from that point. Mother's main argument contra this assertion is that the record does not show that the hearing began then. She argues:

> HCJFS argues that the dispositional hearing in this case began prior to the expiration of the Seventh Amended Complaint. This is inaccurate. Although the trial docket does state that evidence was received, it is common practice for evidence submitted for adjudication to also be submitted for disposition. The trial transcripts that were submitted for this Court to review begin with August 16, 2018. Appellant only appealed the dispositional finding in this case. No party made any attempt to request previous transcripts. The first transcript presented to this Court is dated August 16, 2018; when the disposition actually began. On that date, the first thing HCJFS did was argue that the adjudication finding be reconsidered. The disposition cannot begin until the completion of the adjudication. HCJFS first witness on August 16, 2018 is the caseworker, Laticia Gaines. Neither the Judge nor the Prosecutor state that her testimony is a continuation from a previous court date nor does the Judge state that she is still "under

3

oath." There is no indication throughout the transcript that HCJFS called a witness prior to Ms. Gaines.

{¶5} There are several problems with mother's argument. First, the record demonstrates that the trial court had set an adjudication *and* disposition hearing for June 18, 2018. Mother concedes that a hearing took place on that date and some evidence was received regarding the disposition.

{¶6} Mother also cites to portions of the August 16, 2018 hearing transcript—the fact that the witness was sworn and there was no evidence there had been prior witnesses—for support of her argument that the hearing had begun on that date. But the transcript begins with the trial court stating "Good morning. This is Case Number F/16/2211. It's the continuing matter of the * * * children. Is everyone prepared to proceed?" Further, during questioning of the first witness during the August 16 hearing, the witness was asked "[a]nd then you testified last time, a little bit, about your concerns with regard to Latania Burns. Just for the record, who is she in relation to all the children in this case?" Thus, the record supports the conclusion that testimony had been taken prior to August 16.

{¶7} Further, entries in the record indicate that substantive portions of the adjudication hearing occurred in June. The entry issued at the conclusion of the June 18 hearing indicated that it was being continued in progress to June 19. There is no entry for June 19, but an entry dated June 20 states "Trial in progress to 8/16/20 at 9:00 AM Judge Sylvia Hendon. *Testimony taken for dispositional hearing.* State Exhibit #1 received. Continued in progress." (Emphasis added.)

{¶8} An appellant bears the burden of showing error by references to matters in the record. *State v. Skaggs*, 53 Ohio St.2d 162, 372 N.E.2d 1355 (1978). When portions of the transcript necessary for resolution of assigned errors are omitted from the record, this court has nothing to pass upon and, thus, this court has

no choice but to presume the validity of the trial court's proceedings and affirm. *Knapp v. Edwards Laboratories*, 61 Ohio St.2d 197, 400 N.E.2d 384 (1980). It is the appellant's responsibility to include all the evidence in the appellate record so that the claimed error is demonstrated to the reviewing court. App.R. 9(B).

{¶9} Mother and her guardian attempt to prove that the dispositional hearing began out of time by reference to a selection of the record that they developed for purposes of appeal. But there is evidence on this record that the dispositional hearing began at some point in June 2018, whether it was on June 18, 19, or 20. Both entries in the record and the transcript of August 16 indicate that the matter had been continued in some fashion from June. Without transcripts for the June hearings, this court has no way of determining what happened, why the matters were continued, or whether the parties agreed to waive the time requirements. *See Matter of K.M.*, 4th Dist. Highland No. 20CA4, 2020-Ohio-4476, ¶ 63 (Ohio Supreme Court's decision in *In re K.M.* still allows for disposition after 90 days upon express waiver of the time requirements of R.C. 2151.35(B)(1)). Since the burden is upon appellant to demonstrate error by reference to the record, absent such a transcript the court must presume the regularity of the proceedings. *Knapp* at 199.

{¶10} On this record, it cannot be said that the dispositional hearing did not commence in a timely manner. Not only have mother and her guardian not established otherwise, but there is evidence in the record that it began in June. Absent a complete record to refute this evidence in the record, this court could not say that the trial court erred. We overrule the first assignments of error of mother and her guardian ad litem.

**The Custody Award**

{¶11}   Mother's second assignment of error and the second and third assignments of error of her guardian ad litem assert that the trial court's custody determinations were erroneous.  As this court stated:

> Under R.C. 2151.353(A)(3), if a juvenile court finds a child to be an abused, dependent, or neglected child, it may award legal custody to any person who has filed a petition for legal custody.  The court has discretion to determine what placement option is in the child's best interest.  In determining the child's best interest, the court must consider the factors set out in R.C. 2151.414(D).

(Citations omitted.)  *In re Patterson*, 1st Dist. Hamilton No. C-090311, 2010-Ohio-766, ¶ 15.   The factors set forth in R.C. 2151.414(D) include: the wishes of the children; the children's interaction and relationship with their parents, siblings, and other individuals who may affect their best interest; the children's adjustment to home, school, and community; the mental and physical health of all individuals involved; and whether either parent's actions resulted in the children being dependent.

{¶12}   An appellate court will not reverse the juvenile court's award of custody absent an abuse of discretion.  *Patterson* at ¶ 15.   The term "abuse of discretion" connotes more than an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary or unconscionable.  *Body Power, Inc. v. Mansour*, 1st Dist. Hamilton No. C-130479, 2014-Ohio-1264, ¶ 28, citing *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 291, 450 N.E.2d 1140 (1983).   Most cases will fall within the "unreasonable" prong of discretionary decisions, as few judges issue decisions that are unconscionable or arbitrary.  *AAAA Ents., Inc. v. River Place Community Urban Redev. Corp.*, 50 Ohio St.3d 157, 161, 553 N.E.2d 597 (1990).   A

decision is unreasonable if "there is no sound reasoning process that would support that decision. It is not enough that the reviewing court, were it deciding the issue de novo, would not have found that reasoning process to be persuasive, perhaps in view of countervailing reasoning processes that would support a contrary result." *Id.* "An abuse of discretion implies that a decision is both without a reasonable basis and is clearly wrong." *Aetna Better Health, Inc. v. Colbert*, 10th Dist. Franklin No. 12AP-720, 2012-Ohio-6206, ¶ 21, citing *Hartzog v. Ohio State Univ.*, 27 Ohio App.3d 214, 500 N.E.2d 362 (10th Dist.1985).

{¶13} In this case, it cannot be said that the trial court abused its discretion. The children spoke with the judge in camera and expressed their strong desire to remain where they were. A.B. and T.M. wished to remain with their aunt and uncle, and T.D. wished to remain with his father. The trial court relied extensively on these interviews, concluding that it was "abundantly clear from that session that reunification with mother at this time would not be [the children's] preference * * * and consequently, given their ages and grade placement in school, would not be in their best interest." But the transcript of the in-camera interviews is not part of this record. As a result, we are forced to presume regularity in how they were conducted. *See 435 Elm Invest., LLC, v. CBD Invests. Ltd. Partnership I*, 1st Dist. Hamilton No. C-190133, 2020-Ohio-943, ¶ 21. The failure to establish a record on the in-camera interview proves fatal to this appeal, because the court relied on little else in reaching its conclusion.

{¶14} There was other evidence in this case that supports the trial court's decision. The case had been commenced because mother had been charged with child endangerment. While mother had made progress in the case plan adopted by the trial court, she never progressed beyond the ability to have supervised visits with her children. During these visits, mother often made inappropriate comments or

asked inappropriate questions of the children about their placement. Even though her therapist indicated that she required continued treatment for her personality disorder, mother did not believe she needed further services. There had been a history of sending the children to a punishment room without food or water, discipline with wooden instruments, threats with a bat and a knife, and other threats, but mother did not understand why HCJFS needed to be involved in the lives of her children. Mother also has other children, not involved in this case, who either have been placed with relatives or mother admittedly has a hard time raising.

{¶15} On the other hand, the fathers of T.D. and V.T. have indicated that they will raise the children in a safe environment and will facilitate any visitation ordered by the court. Similarly, the maternal aunt and uncle have provided a loving home for A.B. and T.M., as they have with other children that mother has left in their care.

{¶16} But the decision in this case is far from clear cut. Mother's efforts are evident in the record. Mother notes that an employee of Beech Acres Parenting Center testified that mother was "not the same parent" as she had been and was "pretty clear on what needed to happen" for her to improve and get her children back into her care. For more than three years, mother complied with each aspect of her HCJFS case plan. She was successfully discharged from two separate therapy programs for completing all her treatment goals. Mother's second therapist expressed confusion as to why Mother was even referred in the first place. She completed parenting classes; she almost never missed a visitation; and not a single witness could report any instance of alcohol or substance abuse. Mother's parenting coach reported excellent progress and recommended—at multiple stages of disposition—that immediate steps be taken to transition the children back into mother's home.

{¶17} And the testimony from the caseworker was often unclear regarding the key issues preventing mother's reunification. The guardian ad litem for the children was often as opaque on mother's roadblocks. Faced with these obstacles, it is easy to see why mother might have been confused about her continued need for counseling.

{¶18} Perhaps the most frustrating aspect of this case is the amount of work that this court has had to undertake to divine the rationale of the trial court. The Ohio Supreme Court recently clarified that "R.C. 2151.414(D)(1) does not require a juvenile court to expressly discuss each of the best-interest factors in R.C. 2151.414(D)(1)(a) through (e). Consideration is all that is required." *In re A.M.*, Slip Opinion No. 2020-Ohio-5102, ¶ 31. But the court also cautioned that "a reviewing court must be able to discern from the magistrate's or juvenile court's decision and the court's judgment entry that the court satisfied the statutory requirement that it consider the enumerated factors * * *." *Id.* And while the court declined to read a requirement that the trial court list out each factor, the court repeatedly indicated that such would be a "best practice" because "[d]iscussion of the statutory best-interest factors in R.C. 2151.414(D)(1) would * * * facilitate appellate review of permanent-custody judgments." *Id.* at ¶ 32, citing *In re M.B.*, 9th Dist. Summit No. 21760, 2004-Ohio-597, ¶ 11. "A juvenile court's including a discussion of the best-interest factors in its decision granting permanent custody of a child to an agency is also likely to increase public confidence in the judicial process in this most important area of parental rights." *Id.* at ¶ 32.

{¶19} The trial court's decision below contained only a rudimentary analysis, requiring this court to scour the record to understand the reasons behind its finding that it was in the children's best interest to take legal custody away from their mother. Our review should not have been this difficult. These cases are too

9

important to the parties to leave their determination to such vagaries. There is no reason that the trial court could not explain its analysis, indicating its consideration of the appropriate statutory factors, so that this court is not left to surmise its rationale. But on this record, it cannot be said that the decision of the trial court was supported by "no sound reasoning process" or is "both without a reasonable basis and is clearly wrong." The trial court did not abuse its discretion. We overrule mother's second assignment of error and the second and third assignments of error of her guardian ad litem.

### Visitation Decision Unsupported

{¶20} In the final assignment of error presented by mother's guardian ad litem, the guardian argues that the trial court erred when it modified mother's visitation schedule without rationale. We agree and sustain the assignment of error.

{¶21} In its entry, when awarding custody of A.B., T.M., and I.B. to maternal aunt and uncle, the trial court added that "[v]isitation with mother is suspended at this time, subject to reconsideration upon the filing of a motion by mother or the Guardian appointed for said children." The trial court gave no reason for the decision to suspend visitation in its entry.

{¶22} A trial court must determine whether a change in visitation is in a child's best interest. *Braatz v. Braatz*, 85 Ohio St.3d 40, 706 N.E.2d 1218 (1999), paragraph one of the syllabus. In determining whether a modification is in the child's best interest, the court is guided by the factors in R.C. 3109.051(D). The trial court has broad discretion regarding the modification of parental visitation rights. *Appleby v. Appleby*, 24 Ohio St.3d 39, 492 N.E.2d 831 (1986). Thus, absent an abuse of that discretion, this court will not reverse the trial court's decision. *In re Jane Doe 1*, 57 Ohio St.3d 135, 137, 566 N.E.2d 1181 (1991).

{¶23}    In this case, we are presented with a decision which changed mother's visitation schedule without explanation or analysis of any sort.   For this court to conduct any meaningful abuse-of-discretion analysis, we must have something to analyze.   In the absence of any indication that the trial court considered the factors set forth in R.C. 3109.051(D), a trial court abuses its discretion modifying a visitation order.   *See In re I.R.Q.*, 8th Dist. Cuyahoga No. 105924, 2018-Ohio-292, ¶ 18.

### Conclusion

{¶24}    The record does not support the conclusion that the dispositional hearing was conducted outside the deadline established in R.C. 2151.35(B)(1), and the trial court did not abuse its discretion in its custody determinations in this case. But the trial court failed to give any rationale for its decision to modify mother's visitation orders regarding the children.   We therefore affirm the judgment in part, reverse it in part, and remand the cause for further consideration of the visitation issue.

Judgment accordingly.

**BERGERON** and **CROUSE, JJ.,** concur.

Please note:
       The court has recorded its own entry on the date of the release of this opinion.