[Cite as *In re S.P.*, 2021-Ohio-4335.]

IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
CHAMPAIGN COUNTY

|                       |   |                                      |
|-----------------------|---|--------------------------------------|
| IN RE: S.P.           | : |                                      |
|                       | : |                                      |
|                       | : | Appellate Case No. 2021-CA-15        |
|                       | : |                                      |
|                       | : | Trial Court Case No. 2020-JC-03      |
|                       | : |                                      |
|                       | : | (Appeal from Family Court)           |
|                       | : |                                      |
|                       | : |                                      |
|                       | : |                                      |

. . . . . . . . . . .

O P I N I O N

Rendered on the 10th day of December, 2021.

. . . . . . . . . . .

SAMANTHA B. WHETHERHOLT, Atty. Reg. No. 0092010, Champaign County
Prosecutor's Office, 200 North Main Street, Urbana, Ohio 43078
     Attorney for Appellee, Champaign County Dept. of Job and Family Services

BRENT E. RAMBO, Atty. Reg. No. 0076969, 101 North Ludlow Street, Suite 200, Dayton,
Ohio 45402
     Attorney for Appellant, Father

. . . . . . . . . . . .

TUCKER, P.J.

{¶ 1} Appellant Father appeals a from judgment of the Champaign County Family Court, which granted legal custody of Father's daughter, S.P., to the child's maternal great-grandparents.   For the reasons set forth below, we affirm.

## I.      Facts and Procedural History

{¶ 2} S.P. was born out of wedlock to Mother on in July 2018.   On February 26, 2020, the Champaign County Department of Job and Family Services ("CCDJFS"), filed a complaint alleging that S.P. was an abused and dependent child.[1]   Specifically, the complaint alleged that Mother had overdosed while babysitting her two young cousins at a home located in St. Paris, Ohio; S.P. was also present in the home.   The children discovered Mother unconscious in the living room.   Following an investigation, it was determined that Mother, who had a history of substance abuse problems, had relapsed and had been using drugs for several months.   A drug screen was positive for tramadol, fentanyl, opiates and cocaine.

{¶ 3} A pre-adjudication hearing was conducted on March 13, 2020.   Mother did not appear, but her attorney was present.   Father, who was identified as the putative father, was present and represented by counsel.   Father submitted to a drug screen, which was positive for cocaine.   The court granted temporary custody of S.P. to the great-grandparents and ordered genetic testing to establish whether Father was S.P.'s father.

---

[1] CCDJFS first became involved with Mother in 2016 when she overdosed in a car while her older child was in the backseat.   That child was adjudicated dependent in 2017.

{¶ 4} An adjudication hearing was set for June 17, 2020. On that date, neither Father nor Mother appeared, although their attorneys were present. It was determined that Father had not appeared for his genetic testing. The court reset the adjudication hearing date. On July 16, 2020, the great-grandparents filed a complaint for custody of S.P.

{¶ 5} The adjudication hearing was conducted on August 24, 2020. Mother did not appear, but her counsel was present. Evidence of genetic testing was presented, which established that Father was the father of S.P. The court adjudicated S.P. dependent but dismissed the charge of abuse. All parties agreed to proceed immediately to disposition. The court awarded temporary custody to the great-grandparents, and Father was awarded parenting time. No appeal was taken from this order.

{¶ 6} A review hearing was conducted on November 23, 2020. Neither parent appeared, but their respective attorneys were present. On December 20, 2020, CCDJFS filed a motion seeking to modify the disposition and to award legal custody to the great-grandparents. The following day, Father filed a motion for custody.

{¶ 7} A hearing was conducted on March 23, 2021. Father was more than an hour late for the hearing because he had been stopped for a traffic violation following which it was discovered that he was driving without a license. However, the court delayed the hearing until Father was able to make his appearance. Father submitted to a drug screen, which was negative. The court then heard testimony from the guardian ad litem ("GAL"), the caseworker, the great-grandmother, and Father. The court subsequently entered a judgment granting legal custody of S.P. to the great-

grandparents.   The court also granted supervised parenting time to Father.

{¶ 8} Father appeals.

## II.   Custody Decision

{¶ 9} Father asserts the following as his first assignment of error:

THE TRIAL COURT ABUSED ITS DISCRETION BY DENYING [FATHER]

THE RIGHT TO BE A PARENT TO HIS CHILD.

{¶ 10} Although not directly stated, Father's argument in this assignment of error challenges the family court's dispositional decision as being against the weight of the evidence.   In support, Father first argues that the family court did not properly consider the best interest of S.P. when awarding custody to the great-grandparents.   He further claims the court did not follow the findings and recommendation of the GAL.

{¶ 11} As stated above, the court originally awarded temporary custody of S.P. to the great-grandparents.   No appeal was taken from that order; however, both CCDJFS and Father filed motions seeking to modify that disposition.

{¶ 12} The "modification or termination of dispositional orders involving abused, neglected, or dependent children [is governed by] R.C. 2151.353(F)(1) and (2) and R.C. 2151.42(A) and (B) govern the modification or termination of dispositional orders." (Citations omitted.)   *In re I.E.*, 2d Dist. Montgomery No. 28646, 2020-Ohio-3477, ¶ 10. "R.C. 2151.353(F)(1) grants the juvenile court continuing jurisdiction over any child for whom the court had entered an order of disposition, and R.C. 2151.353(F)(2) allows any party (other than a parent whose parental rights have been terminated) to 'request the court to modify or terminate any order of disposition.'"   *Id.*   "If such a motion is filed, the

court must hold a hearing on the motion as if the hearing were the original dispositional hearing." *Id.* at ¶ 11, citing R.C. 2151.353(F)(2).

{¶ 13} CCDJFS filed a motion in which it requested a modification of the disposition of temporary custody and an order granting legal custody to the great-grandparents. Father filed a motion asking that he be awarded legal custody. A juvenile court may award legal custody of a child to a non-parent upon a finding that doing so is in the child's best interest. *In re A.F.*, 2018-Ohio-310, 103 N.E.3d 1260, ¶ 51 (2d Dist.), citing R.C. 2151.353(A)(3); *In re J.M.*, 2d Dist. Montgomery No. 28508, 2020-Ohio-822, ¶ 6. Legal custody is significantly different from, and not as drastic a remedy as, the termination of parental rights, because the parent still retains residual rights "including, but not necessarily limited to, the privilege of reasonable visitation, consent to adoption, the privilege to determine the child's religious affiliation, and the responsibility for support." R.C. 2151.011(B)(50); R.C. 2151.353(A)(3)(c). For this reason, the court applies the "preponderance of the evidence" standard to the court's factual findings. *In re S.E.*, 8th Dist. Cuyahoga No. 96031, 2011-Ohio-2042, ¶ 14, citing *In re Nice*, 141 Ohio App.3d 445, 455, 2001-Ohio-3214, 751 N.E.2d 552 (7th Dist.). "Preponderance of the evidence simply means 'evidence which is of a greater weight or more convincing than the evidence which is offered in opposition to it.' " *In re Starks*, 2d Dist. Darke No. 1646, 2005-Ohio-1912, ¶ 15, quoting *Black's Law Dictionary* 1182 (6th Ed.1998).

{¶ 14} At the hearing, it was established that Father wished to have legal custody of S.P.[2] Mother had previously expressed her desire that the child remain with the great-

---

[2] Father asserts that the family court failed to acknowledge his wish to have legal custody of S.P. However, the court's judgment expressly notes that Father was seeking custody of the child. Thus, it can be inferred that the court was aware of his wishes.

grandparents. As S.P. was only two years old at the time of the hearing, her wishes could not be ascertained.

{¶ 15} The evidence supported a finding that S.P. and Father were bonded and had a loving relationship. However, the evidence also demonstrated that S.P. was doing well in her great-grandparents' care. She had resided with them since March 2020. According to the ongoing caseworker, S.P. was bonded to the great-grandparents as well as her half-sibling, of whom they also had legal custody. The caseworker testified that the great-grandparents were able to provide for all of S.P.'s needs and that she was thriving in their care. The guardian ad litem concurred and recommended that the great-grandparents be awarded legal custody.

{¶ 16} The record demonstrates CCDJFS prepared a case plan for Father which included drug, alcohol, and mental health screening and treatment. The plan also required him to obtain and maintain suitable housing and to submit to drug screens.

{¶ 17} According to the record, in the six months prior to the hearing, Father had lived in three different places. According to his testimony, Father did not have his own residence, and thus he stayed in the homes of friends. During the pendency of this case, he had lived in Columbus, Chillicothe and Urbana. He also testified that after he tested positive for cocaine in March 2020, he admitted himself to an inpatient drug rehabilitation facility in Portsmouth, Ohio where he stayed for almost three months. At the time of the hearing, Father had been living in a home with family friends who resided in Bloomfield, Ohio for approximately one week. He testified that he had been invited to reside there for as long as he needed. Father testified he did not have to pay rent for this housing. He admitted that he did not have a lease guaranteeing the housing. Both the GAL and

the caseworker testified that Father had not met the case plan goal of obtaining stable housing.

{¶ 18} The record also demonstrated that Father was employed at a gutter company owned by the person with whom he was then residing. He testified that he had worked for this company since he was 18 years old, that the position was full-time, and that he earned more than $18 per hour. However, his testimony also indicated that the work was seasonal and that he usually got a temporary job when the gutter business was idle. Despite his claim that he had steady employment and income, Father admitted he did not pay child support, rent, or utilities. He also testified that he had not gotten his driver's license, in part because he had not been able to pay approximately $200 in fines. Both the caseworker and the GAL testified that Father had failed to meet the requirement for stable employment.

{¶ 19} Father further testified that he had remained drug-free since his initial positive drug screen. He testified that he had checked himself into a rehabilitation program but admitted that he had left without completing the program. The evidence also demonstrated that he failed to undergo mental health treatment. Father noted that he had tested negative on two of his drug screens, including the one taken the day of the hearing. However, the caseworker noted that he had been unable to screen Father for the four months prior to the hearing because Father would not disclose his location to CCDJFS.

{¶ 20} The record also demonstrated that Father's visitation with S.P. had been spotty. He had not exercised his visitation in the three weeks prior to the hearing and had had no visitation or contact with the child from October 3, 2020 until December 27,

2020, at which time he spent 45 minutes with the child. Additionally, there was evidence that Father had never exercised visitation for longer than two hours. Indeed, one of his visits lasted only 12 minutes. Also, despite being offered visitation in addition to the regularly scheduled visitation, Father had not exercised any additional visitation time with the child. Neither the caseworker nor the GAL considered the case plan requirement for visitation to be completed.

{¶ 21} Based upon this evidence, the family court concluded Father had failed to complete his case plan. The court further found that awarding legal custody to the great-grandparents was in S.P.'s best interest.

{¶ 22} A trial court has broad discretion regarding its disposition of a dependent child, and thus we review the court's award of legal custody for an abuse of that discretion. *In re. S.A.*, 2012-Ohio-3394, 974 N.E.2d 1261, ¶ 41 (2d Dist.). A court abuses its discretion when its decision is unreasonable, arbitrary, or unconscionable. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219, 450 N.E.2d 1140 (1983).

{¶ 23} Upon review of the record, we find competent, credible evidence in the record to support the family court's determination of S.P.'s best interest by a preponderance of the evidence. Given this conclusion, the court did not abuse its discretion in awarding the legal custody to the great-grandparents.

{¶ 24} Father's first assignment of error is overruled.

### III. Visitation Order

{¶ 25} The second assignment of error states as follows:

THE TRIAL COURT ABUSED ITS DISCRETION IN DENYING THE

FATHER UNSUPERVISED VISITATION.

{¶ 26} Father asserts that the court abused its discretion when it awarded visitation to him but included the provision that visitation had to be conducted in the presence of the great-grandparents.

{¶ 27} In ordering visitation, the trial court must consider the "totality of the circumstances as they relate to the child's best interest." *In re M.E.*, 10th Dist. Franklin No. 12AP-684, 2013-Ohio-2562, ¶ 25, quoting *In re C.J.*, 4th Dist. Vinton No. 10CA681, 2011-Ohio-3366, ¶ 15. Unless the court has abused its discretion, its orders regarding visitation will be upheld on review. *In re Timberlake*, 10th Dist. Franklin No. 02AP-792, 2003-Ohio-1183, ¶ 26.

{¶ 28} As set forth above, the record established that Father had a history of substance abuse and that he had not complied with the terms of his case plan to address the issue. He further lacked stable employment and housing. Moreover, Father had had inconsistent contact with S.P. during the course of the proceedings; at times, he had failed to exercise his regular visitation, and he had not accepted the offer of additional visitation. Although he admitted to driving, he did not have a drivers' license.

{¶ 29} Based upon the evidence in this record, we cannot say that the court abused its discretion in ordering visitation to take place in the presence of the great-grandparents.[3] Therefore, the second assignment of error is overruled.

## IV. Conclusion

---

[3] Should Father address his case plan, he is free to petition the court for a modification of visitation in the future.

{¶ 30} Both of Father's assignments of error being overruled, the judgment of the family court is affirmed.

. . . . . . . . . . . . .

WELBAUM, J. and EPLEY, J., concur.

Copies sent to:

Samantha B. Whetherholt
Brent E. Rambo
Miranda Warren
L.C. and J.C.
Vincent L. Foulk
Hon. Lori L. Reisinger