[Cite as *In re S.S.*, 2022-Ohio-520.]

## COURT OF APPEALS OF OHIO

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

IN RE S.S., ET AL.                    :

                                      :       Nos. 110793 and 110795

Minor Children                        :

                                      :

[Appeal by K.S., Father]              :

---

### JOURNAL ENTRY AND OPINION

**JUDGMENT:** REVERSED AND REMANDED
**RELEASED AND JOURNALIZED:** February 24, 2022

---

Civil Appeal from the Cuyahoga County Court of Common Pleas
Juvenile Division
Case Nos. AD-16-909928 and AD-16-909927

---

### *Appearances:*

Hans C. Kuenzi Co., L.P.A., and Hans C. Kuenzi, *for appellant.*

EILEEN T. GALLAGHER, J.:

{¶ 1} This cause came to be heard on the accelerated calendar pursuant to App.R. 11.1 and Loc.App.R. 11.1. Appellant-father, K.S. (hereinafter "Father"), appeals from the juvenile court's dismissal of his motion for parenting time. He raises the following assignment of error for review:

> The trial court erred in dismissing Father's motions for parenting time without conducting a hearing upon said motions.

{¶ 2} After careful review of the record and relevant case law, we reverse and remand for the juvenile court to hold an evidentiary hearing and consider the totality of circumstances as they relate to the best interests of the minor children.

## I.     Procedural and Factual History

{¶ 3} Father and H.H. ("Mother") are the biological parents of the minor children, E.S. (d.o.b. July 1, 2009) and S.S. (d.o.b. Dec. 31, 2013). This consolidated appeal stems from temporary custody proceedings that were initiated by the Cuyahoga County Division of Children and Family Services ("CCDCFS" or the "agency") in June 2016. The agency's complaint for temporary custody alleged that the children were neglected based on Father and Mother's failure to provide a safe and sanitary home for each child, their failure to provide for the educational needs of E.S., and issues concerning Father's mental health.

{¶ 4} On June 27, 2016, the children were committed to the emergency temporary care and custody of CCDCFS. A case plan was developed by the agency to address the concerns that caused the children to be removed from their home. The case plan required the parents to undergo psychological evaluations, obtain professional assistance to maintain a safe and sustainable home, and successfully complete parenting and domestic abuse services. The case plan provided Father and Mother with supervised visitation rights.

{¶ 5} On February 4, 2017, the children were adjudicated neglected and committed to the temporary custody of CCDCFS. On March 30, 2017, the agency suspended Father's visitation rights pending an ongoing criminal investigation into

allegations that Father had sexually abused Mother's oldest child, A.C. (d.o.b. December 11, 2002).

{¶ 6} On May 24, 2017, the agency filed a motion requesting the juvenile court to modify its order of temporary custody to an order of legal custody in favor of the children's maternal aunt and uncle, T.H. and J.R. The motion alleged that it was in the children's best interests to be placed in the legal custody of T.H. and J.R., because Father was incarcerated pending a criminal indictment, and each parent failed to successfully complete the objectives of their respective case plans.

{¶ 7} On August 1, 2017, the juvenile court committed the children to the legal custody of T.H. and J.R., finding the continued extension of temporary custody was not necessary and not in the best interests of E.S. and S.S. The juvenile court's order did not provide Father parenting time or address the agency's prior suspension of Father's visitation rights.

{¶ 8} On September 16, 2020, Father filed a motion for immediate parenting time with E.S. and S.S. Father, who was still incarcerated, sought regular and frequent parenting time with each child via video, telephone, email, and written communications. Father further sought an order requiring the legal custodians to transport the children to the correctional facility for in-person parenting time once every three months.

{¶ 9} A pretrial hearing was held before a magistrate on November 9, 2020. Father appeared at the hearing via videoconference. At the conclusion of the hearing, the magistrate continued the matter for further proceedings, but granted

Father the temporary right to make telephone calls with the children during specified time periods. Father was also permitted to mail letters and packages to the home of the legal custodians.

{¶ 10} On December 28, 2020, the magistrate issued a pretrial order terminating Father's temporary parenting time and instructing Father that he was to have no contact with the children until further notice. The no-contact order included, but was not limited to, telephonic, written, and email correspondences.

{¶ 11} On January 11, 2021, Father filed a motion to reinstate his temporary parenting time rights. In the motion, Father accepted responsibility for "rude and disrespectful" statements he made to the children's legal custodian, T.H., during a phone conversation with the children. Father maintained that he would do better moving forward and would strictly limit his communications with T.H. to matters involving the children.

{¶ 12} On January 19, 2021, the magistrate denied Father's motion to reinstate his parenting-time rights and the matter was set for a trial to commence on February 9, 2021. On February 5, 2021, however, Father voluntarily withdrew his motion for immediate parenting time and the motion was dismissed without prejudice.

{¶ 13} On June 15, 2021, Father renewed his motion for parenting time, arguing that "orders granting him regular and frequent parenting time with [E.S. and S.S.] would serve the best interests of said minor children."

{¶ 14} On June 25, 2021, the magistrate issued a decision finding that "good cause is not shown for this motion." Accordingly, the magistrate dismissed Father's motion without prejudice. Father filed objections to the magistrate's decision, arguing that the magistrate's decision impermissibly ignored his right to reasonable visitation as a noncustodial parent and failed to assess the totality of the circumstances as they relate to the best interests of each child.

{¶ 15} On July 29, 2021, the juvenile court affirmed, approved, and adopted the magistrate's decision. Accordingly, the juvenile court dismissed Father's motion to modify parenting time without prejudice.

{¶ 16} Father now appeals from the juvenile court's judgment.

## II. Law and Analysis

{¶ 17} In his sole assignment of error, Father argues the juvenile court erred by dismissing his motions for parenting time without a hearing. Father contends the court undertook no analysis and failed to consider the totality of the circumstances weighing in his favor, including his fundamental right to reasonable visitation with his children.

{¶ 18} Before we address the merits of the assignments of error, we must first determine whether we have jurisdiction to consider this appeal. Appellate courts only have jurisdiction to review final appealable orders. *See* R.C. 2505.02. If an order is not final and appealable, then an appellate court has no jurisdiction to review the matter and it must be dismissed. An order is final and appealable if it complies with R.C. 2505.02 and, if applicable, Civ.R. 54(B).

**{¶ 19}** R.C. 2505.02(B) defines final orders as follows:

(B) An order is a final order that may be reviewed, affirmed, modified, or reversed, with or without retrial, when it is one of the following:

(1) An order that affects a substantial right in an action that in effect determines the action and prevents a judgment;

(2) An order that affects a substantial right made in a special proceeding or upon a summary application in an action after judgment;

(3) An order that vacates or sets aside a judgment or grants a new trial;

(4) An order that grants or denies a provisional remedy and to which both of the following apply:

(a) The order in effect determines the action with respect to the provisional remedy and prevents a judgment in the action in favor of the appealing party with respect to the provisional remedy.

(b) The appealing party would not be afforded a meaningful or effective remedy by an appeal following final judgment as to all proceedings, issues, claims, and parties in the action.

**{¶ 20}** In this case, the juvenile court dismissed Father's motion for parenting time without prejudice.

Generally, an appeal from a dismissal without prejudice is not a final, appealable order. "Under well-established precedent, a dismissal under Civ.R. 41(A)(1)(a) is not considered a final appealable order because, under most circumstances, it does not have any prejudicial effect upon the parties' future rights." *State ex rel. Die Co. v. Court of Common Pleas Lake Cty.*, 11th Dist. Lake No. 2010-L-107, 2011-Ohio-5232, ¶ 26, citing *Thorton v. Montville Plastics & Rubber, Inc.*, 121 Ohio St.3d 124, 2009-Ohio-360, 902 N.E.2d 482, ¶ 24. *See also Dewalt v. Tuscarawas Cty. Health Dept.*, 5th Dist. Tuscarawas No. 2012 AP 05 0031, 2012-Ohio-5294 (appeal from a dismissal without prejudice dismissed for lack of jurisdiction).

*State ex rel. Cleveland v. Shaughnessy*, 8th Dist. Cuyahoga No. 107403, 2018-Ohio-4797, ¶ 25.

**{¶ 21}** In his supplemental brief, Father argues the juvenile court's judgment constitutes a final appealable order under R.C. 2505.02(B)(1) because it affects a substantial right and conclusively determined his entitlement to parenting time. Father contends that although the juvenile court characterized its judgment as a dismissal without prejudice, the judgment constituted an adjudication on the merits that denied him of his substantial rights as a parent. Thus, Father maintains that absent appellate review, "he has no avenue to obtain relief and the opportunity to see his children."

**{¶ 22}** A "substantial right" is defined as "a right that the United States Constitution, the Ohio Constitution, a statute, the common law, or a rule of procedure entitles a person to enforce or protect." R.C. 2505.02(A)(1). "An order affects a substantial right if in the absence of immediate review of the order effective relief will be foreclosed." *Farshchian v. Glenridge Machine Co.*, 8th Dist. Cuyahoga No. 91821, 2009-Ohio-1602, ¶ 12, citing *Bell v. Mt. Sinai Med. Ctr.*, 67 Ohio St.3d 60, 63, 616 N.E.2d 181 (1993). Relatedly, "'[f]or an order to determine the action and prevent a judgment for the party appealing, it must dispose of the whole merits of the cause or some separate and distinct branch thereof and leave nothing for the determination of the court.'" *Natl. City Commercial Capital Corp. v. AAAA At Your Serv., Inc.*, 114 Ohio St.3d 82, 2007-Ohio-2942, 868 N.E.2d 663, ¶ 7, quoting *Hamilton Cty. Bd. of Mental Retardation & Dev. Disabilities v. Professionals Guild of Ohio*, 46 Ohio St.3d 147, 153, 545 N.E.2d 1260 (1989).

{¶ 23} After careful consideration, we find the juvenile court's dismissal of Father's motion for parenting time constitutes a final appealable order under R.C. 2505.02(B)(1). In this case, the juvenile court's judgment undoubtedly affected the substantial rights afforded to Father as the children's noncustodial parent. *See Pettry v. Pettry*, 20 Ohio App.3d 350, 486 N.E.2d 213 (8th Dist.1984) (recognizing that a noncustodial parent possesses a natural right to visitation with his or her child that should be denied only under extraordinary circumstances); *see also* R.C. 2151.353(A)(3)(c) (providing that an award of legal custody of a child does not divest parents of their residual parental rights, privileges, and responsibilities, including reasonable visitation). Similarly, we agree that the juvenile court's dismissal of Father's motion for parenting time constituted an adjudication on the merits. The court's judgment did not find that the motion was jurisdictionally deficient or otherwise lacking in form. Rather, having reviewed the evidentiary material attached in support of the motion for parenting time, the court found that "good cause was not shown for the motion." The juvenile court's judgment fully disposed of Father's motion and resolved all issues pertaining to visitation and parenting time. Delaying review until some unspecified time period would deny Father full and complete relief. *See In re M.E.*, 10th Dist. Franklin No. 12AP-684, 2013-Ohio-2562 (addressing whether the trial court erred in denying father's "motion for visitation at his place of incarceration" after legal custody of his children was awarded to nonparents). Having jurisdiction to review the juvenile court's final judgment, we turn to the merits of Father's appeal.

**{¶ 24}** We begin our analysis by acknowledging the statutes that govern custody and visitation issues concerning children, like E.S. and S.S., who have been adjudicated to be neglected. As relevant to the case before this court, R.C. 2151.353 provides, in pertinent part:

> (A) If a child is adjudicated * * * [a] neglected child, the court may make any of the following orders of disposition:
>
> * * *
>
> (3) Award legal custody of the child to either parent or to any other person who, prior to the dispositional hearing, files a motion requesting legal custody of the child or is identified as a proposed legal custodian in a complaint or motion filed prior to the dispositional hearing by any party to the proceedings. * * *[;]
>
> * * *
>
> (F)(1) The court shall retain jurisdiction over any child for whom the court issues an order of disposition pursuant to division (A) of this section * * * until the child attains the age of eighteen years * * *[;]
>
> (2) Any * * * party, other than any parent whose parental rights with respect to the child have been terminated pursuant to an order issued under division (A)(4) of this section, by filing a motion with the court, may at any time request the court to modify or terminate any order of disposition issued pursuant to division (A) of this section * * *. The court shall hold a hearing upon the motion as if the hearing were the original dispositional hearing and shall give all parties to the action and the guardian ad litem notice of the hearing pursuant to the Juvenile Rules.[1]

---

[1] In this case, Father is not attempting to disrupt or otherwise modify the juvenile court's disposition of legal custody pursuant to the continuing jurisdiction afforded to the juvenile court under R.C. 2151.353(F)(1). Rather, Father is attempting to reestablish his right to reasonable visitation as a noncustodial parent, which was suspended by the agency following his incarceration and later terminated by the juvenile court pending the resolution of his initial motion for parenting time. Our interpretation of Father's motion is consistent with the notion that issues concerning visitation are ancillary to a legal custody determination. *Braatz v. Braatz*, 85 Ohio St.3d 40, 44, 706 N.E.2d 1218 (1999) ("'Visitation' and 'custody' are related but distinct legal concepts."), quoting *In re Gibson*,

{¶ 25} R.C. 2151.011(B)(21) defines "legal custody" as follows:

"Legal custody" means a legal status that vests in the custodian the right to have physical care and control of the child and to determine where and with whom the child shall live, and the right and duty to protect, train, and discipline the child and to provide the child with food, shelter, education, and medical care, *all subject to any residual parental rights, privileges, and responsibilities.*

(Emphasis added.)

{¶ 26} Pursuant to the foregoing statutes, the children were adjudicated neglected and placed in the legal custody of their maternal aunt and uncle, T.H. and J.R. The juvenile court's judgment significantly impacted Father's legal rights concerning his children. T.H. and J.R. thereafter possessed the primary right to make decisions concerning the children's upbringing, care, and supervision.

{¶ 27} However, legal custody is significantly different from, and not as drastic a remedy as, the termination of parental rights. Noncustodial parents, like Father, continue to have residual rights "including, but not necessarily limited to, the privilege of reasonable visitation, consent to adoption, the privilege to determine the child's religious affiliation, and the responsibility for support." R.C. 2151.011(B)(48); R.C. 2151.353(A)(3)(c). These rights, however, are not absolute, but "are always subject to the ultimate welfare of the child." *In re Cunningham*, 59 Ohio St.2d 100, 106, 391 N.E.2d 1034 (1979). In fact, the juvenile court is expressly

---

61 Ohio St.3d 168, 171, 573 N.E.2d 1074 (1991). Consequently, we find the procedures governing motions to modify or terminate an order of disposition under R.C. 2151.353(F)(2) are not applicable to this appeal.

authorized to "[c]ontrol any [parental] conduct or relationship that will be detrimental or harmful to the child." R.C. 2151.359(A)(1).

{¶ 28} Chapter 2151 of the Ohio Revised Code, which governs proceedings relative to neglected children, does not define "reasonable visitation" as that term is used in R.C. 2151.011(B)(48). Moreover, Chapter 2151 does not provide a definitive test or set of criteria to apply in determining whether, and on what terms, to grant visitation rights to the noncustodial parents in proceedings incident to a disposition pursuant to R.C. 2151.353(A)(3). *See In re G.M.,* 8th Dist. Cuyahoga No. 95410, 2011-Ohio-4090, ¶ 1, fn. 1, citing *In re C.J.,* 4th Dist. Vinton No. 10CA681, 2011-Ohio-3366, ¶ 15. However, in such circumstances, appellate districts throughout the state of Ohio have recognized that in resolving a motion for visitation, a trial court must consider "'the totality of circumstances as they relate to the child's best interest.'" *In re C.L.,* 8th Dist. Cuyahoga No. 110363, 2021-Ohio-3819, ¶ 28, quoting *In re K.D.,* 2017-Ohio-4161, 92 N.E.3d 123, ¶ 27 (9th Dist.); *see also In re M.E.,* 10th Dist. Franklin No. 12AP-684, 2013-Ohio-2562, ¶ 25; *In re C.J.,* at ¶ 15; *In re J.S.,* 11th Dist. Lake No. 2011-L-162, 2012-Ohio-4461, ¶ 30; *In re Knisley,* 4th Dist. Ross No. 97CA2316, 1998 Ohio App. LEXIS 2347, *6 (May 26, 1998); *In re N.F.,* 9th Dist. Summit No. 29508, 2020-Ohio-2701, ¶ 20; *In re K.W.,* 2018-Ohio-1933, 111 N.E.3d 368, ¶ 40 (4th Dist.); *In re H.P.,* 6th Dist. Lucas No. L-21-1090, 2021-Ohio-4446, ¶ 9; *In re S.P.,* 2d Dist. Champaign No. 2021-CA-15, 2021-Ohio-4335, ¶ 27. This may include considerations of the best interest factors set forth in R.C. 3109.051(D), to the extent they are applicable. *See In re N.F.* at ¶ 23 ("Although R.C. 3109.051 does

not refer to parenting time in proceedings involving an abused, neglected, or dependent child, 'there is no statute that does.'"); *In re J.S.* at ¶ 31 ("While the provisions related to the best interest standard and factors contained in R.C. 3109.051 may not explicitly state that they apply to abuse cases under R.C. Chapter 2151, there is no statement in the statute that such factors cannot be applied to evaluate whether a court's determination is in a child's best interest in such cases.").

{¶ 29} In turn, our review of a trial court's decision regarding a parent's visitation rights in the context of an abuse, neglect, or dependency action is for an abuse of discretion. *In re K.W.* at ¶ 38, citing *In re C.J.* at ¶ 11. A trial court abuses its discretion when its decision is unreasonable, arbitrary, or unconscionable. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219, 450 N.E.2d 1140 (1983). "An abuse of discretion includes a situation in which a trial court did not engage in a 'sound reasoning process.'" *State v. Darmond*, 135 Ohio St.3d 343, 2013-Ohio-966, 986 N.E.2d 971, ¶ 34, quoting *State v. Morris*, 132 Ohio St.3d 337, 2012-Ohio-2407, 972 N.E.2d 528, ¶ 14, quoting *AAAA Ents., Inc. v. River Place Community Urban Redevelopment Corp.*, 50 Ohio St.3d 157, 161, 553 N.E.2d 597 (1990). The abuse-of-discretion standard is deferential and does not permit an appellate court to simply substitute its judgment for that of the trial court. *Id.* at ¶ 34.

{¶ 30} In this case, we are presented with a decision that denied Father his residual parenting rights without explanation or analysis. Significantly, the juvenile court's judgment contains no express indication that the court considered the best interests of the children. Moreover, in the absence of an evidentiary hearing, we find

there to be insufficient information to adequately assess whether it would be detrimental or harmful to the children to grant Father reasonable visitation rights.

{¶ 31} There is no dispute that the record supports the juvenile court's determination that it was in the children's best interests to grant an order of legal custody in favor of T.H. and J.R. Father and Mother failed to remedy the circumstances that caused the children to be removed from their home, and Father was incarcerated during the pendency of the agency's case. However, more than four years has passed since the juvenile court committed the children to the legal custody of T.H. and J.R. At this time, we are unable to conclude that the evidence supporting the trial court's custody determination equally mandates a finding that it was in the children's best interests to deny Father's request for parenting time. Significantly, Father's parental rights have not been terminated and, at one point, the magistrate concluded that it was appropriate for him to have telephonic and written communications with the children while he was incarcerated. We are aware that the magistrate quickly terminated its order based on statements Father allegedly made to T.H. during a phone conversation with the children. On this record, however, this court is left to speculate about a number of relevant factors, including (1) the nature of Father's current relationship with the children, (2) the wishes of the children, (3) the willingness of the legal custodians to facilitate parenting time, (4) the recommendation of the children's guardian ad litem, (5) the appropriateness of Father's phone conversations with the children before the court's no-contact order was implemented, (6) the substance of Father's statements to T.H.

during the phone conversation with the children, and (7) the nature and status of Father's criminal incarceration.

{¶ 32} Based on the foregoing, we find the juvenile court abused its discretion in denying Father's motion for parenting time without developing the record or assessing the best interests of the children. Our decision does not speak to the merits of Father's motion for parenting time, but only to the form of the court's judgment and the deficiencies in the record before us. For this court to conduct any meaningful abuse-of-discretion analysis, we must have something to analyze. *See In re T.M.*, 1st Dist. Hamilton Nos. C-200009 and C-200012, 2020-Ohio-6950, ¶ 23; *see also Gerdes v. Gerdes*, 12th Dist. Butler No. CA2019-07-106, 2020-Ohio-3405, ¶ 19 ("To be able to conduct any meaningful review of the trial court's exercise of discretion, we must be able to discern the analysis for its decision."); *see also In re I.R.Q.,* 8th Dist. Cuyahoga No. 105924, 2018-Ohio-292, ¶ 18 (finding no information in the judgment entry to suggest the trial court considered the child's best interests in modifying visitation).

{¶ 33} Father's sole assignment of error is sustained.

{¶ 34} The trial court's judgment is reversed and remanded for further proceedings consistent with this opinion.

It is ordered that appellant recover from appellee costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court, juvenile division, to carry this judgment into execution. Case remanded to the trial court for execution of sentence.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
EILEEN T. GALLAGHER, JUDGE

SEAN C. GALLAGHER, A.J., and
KATHLEEN ANN KEOUGH, J., CONCUR