[Cite as *In re A.J.*, 2024-Ohio-1836.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

BUTLER COUNTY

|  |  |  |
|---|---|---|
| IN RE: | : | |
| A.J. | : | CASE NO. CA2023-11-121 |
| | : | O P I N I O N<br>5/13/2024 |
| | : | |
| | : | |
| | : | |

APPEAL FROM BUTLER COUNTY COURT OF COMMON PLEAS
JUVENILE DIVISION
Case No. JN2021-0291

Michael T. Gmoser, Butler County Prosecuting Attorney, and Willa Concannon, Assistant Prosecuting Attorney, for appellee.

Garrett Law Offices, and Dawn S. Garrett, for appellant.

Andrew Brenner, for Mother.

Sandra Jones, legal custodian, pro se.

Amy Ashcraft, guardian ad litem.

**M. POWELL, J.**

{¶ 1} Appellant ("Father") appeals a decision of the Butler County Court of

Common Pleas, Juvenile Division, granting him visitation with his teenage daughter, A.J. ("Allie), at her discretion.[1]

{¶ 2} Allie was born in February 2007. On October 29, 2021, Butler County Children's Services (the "Agency") filed a complaint alleging that Allie was a neglected and dependent child. Allie was 14 years old. The complaint alleged that Allie's mother ("Mother") had chronically neglected Allie's medical needs, that Allie had not attended school for a year, and that Mother claimed she could not afford food. Father lives in Kentucky. The complaint reported that Father had very little contact with Allie. Temporary custody was granted to the Agency, Allie was placed in foster care, and a guardian ad litem ("GAL") was appointed.

{¶ 3} A pretrial hearing was held before a magistrate on December 3, 2021. The GAL advised the magistrate that Allie wished to have discretion whether to visit with Father. The GAL explained that Allie did not have a bond with Father and that she was uncomfortable with the idea of visiting with Father. Mother supported the request. In an order issued that day, the magistrate granted Allie the discretion whether to visit with Father. This order remained unchanged throughout the proceedings.

{¶ 4} On January 11, 2022, upon Father's and Mother's stipulation, Allie was adjudicated dependent; the neglect allegation was withdrawn. Subsequently, Father was permitted supervised visitation with Allie at the Family Healing Center. During an April 2022 review hearing, the GAL advised the magistrate that Father was improperly discussing the case with Allie and that he was trying to pressure her into agreeing to unsupervised visits. During a July 2022 review hearing, the GAL advised the magistrate that Father was still improperly discussing the case with Allie, that Allie did not want

---

1. Allie is a fictitious name for A.J. which we will use throughout the opinion for readability purposes.

unsupervised visitation with Father, and that the day before, the visit was ended because Father could not be redirected. Father disputed that his visits were problematic, denied he had done anything wrong, and requested that his visitation be unsupervised. Father advised the magistrate that Allie "has a history of lying and that has been established from the beginning of [the case]."

{¶ 5} On October 22, 2022, following difficult and unsuccessful placements in foster care and group homes, Allie was placed in the temporary custody of her maternal grandmother ("Grandmother") in Columbus, Ohio, where she has remained since. It is undisputed that Allie has thrived in Grandmother's custody. Once Allie moved in with Grandmother, Father neither visited Allie nor tried to visit.

{¶ 6} During a May 2023 review hearing, Father and Mother both agreed that Grandmother be designated as Allie's legal custodian. Consequently, the Agency orally moved the juvenile court to grant legal custody of Allie to Grandmother. A hearing was scheduled for August 11, 2023, to determine Father's visitation with Allie. Father attended the August 11, 2023 hearing remotely. At the outset of the hearing, Father advised he was now opposed to Grandmother having legal custody of Allie. Father asked the court to grant legal custody to Mother and to order mandatory visitation with him. As Mother did not want legal custody of Allie and approved of Grandmother having legal custody, the hearing proceeded on the Agency's motion to grant legal custody to Grandmother and Father's request for legal custody, or alternatively, for mandatory visitation.

{¶ 7} Allie was 16 and one-half years old and in the 11th grade at the time of the hearing. A social summary admitted at the hearing indicated that Allie has "remarkable intelligence and excellent communication skills," advocates for her wants and needs, and is doing very well in Grandmother's custody. The social summary also stated that Father lives in Kentucky, that he failed to complete parenting classes, even though he was

permitted to attend remotely, that he was consequently terminated from the parenting class program, and that he once again failed to complete the program when given a second opportunity to do so. The record indicates that a home study was never completed due to Father's non-compliance.

{¶ 8} The GAL recommended legal custody to Grandmother and visitation with Father (and Mother) at Allie's discretion. The GAL stated that Allie has never wavered in her wish that she not be placed with either of her parents, that Allie wants to remain in Grandmother's custody and "learn life skills to move out on her own at 18," and that she is not bonded with Father and does not want to visit with him.

{¶ 9} Testimony at the hearing revealed that despite Grandmother's offer to facilitate Father's visits with Allie by meeting him halfway in Dayton, Ohio, Grandmother sending Father $100 on a separate occasion, and the Agency offering Father free transportation to Columbus if he would come to Cincinnati from his Kentucky residence, Father never availed himself of these opportunities. Once Allie moved in with Grandmother, Father never visited Allie. Father, who does not have a driver's license or a car, claimed that traveling to Columbus necessarily involved using Uber or Lyft in addition to Greyhound and was therefore cost-prohibitive. Father blamed Grandmother for failing to facilitate visits, lamented that Grandmother had only once sent him $100, and stated that Grandmother should pay 50 percent of his transportation costs. Father testified he was "working on getting" his driver's license. Father also expressed concern that Allie might not attend visitation if he travelled to see her.

{¶ 10} Father admitted he was absent from Allie's life for 13 years and that he came back into her life when this case commenced. Father testified that although there was some friction during their earlier supervised visits at the Family Healing Center because he was learning how to address Allie's anxiety, their relationship was very good.

Father blamed the cancellation of one of these visits on the fact he "got a little irritated because I kept getting corrected on things that had no business corrected on."

{¶ 11} Father testified that his current contact with Allie was solely through Facebook Messenger and that it was very positive. On one hand, Father testified he was "trying to let Allie have it her way where she's comfortable" and that he "would like to have one on one visitation with [Allie] when she's comfortable." On the other hand, Father repeatedly castigated Allie as being "unfairly mean" and full of animosity toward him, testified he was clueless as to why there was so much animosity toward him from Allie, and opined that Allie had abused the discretion granted to her regarding visitation. Consequently, Father requested that Allie be required to visit with him.

{¶ 12} Upon being cross-examined by the Agency's counsel, Father became angry and disconnected from the hearing. The magistrate observed that Father had "left the hearing." As a result, the GAL was unable to cross-examine Father. Following closing argument by Father's counsel and the GAL, Father came back to the hearing. He blamed the earlier disconnection on his cellphone overheating while outside.

{¶ 13} On August 15, 2023, the magistrate awarded Grandmother legal custody of Allie and ordered that visitation with Father (and Mother) be at Allie's discretion and as arranged by Grandmother. In so holding, the magistrate found that (1) Father was not involved in 13 of Allie's 16 years of her life, his relationship with Allie was strained, and there was no bond between them; (2) Allie had demonstrated a willingness to arrange contact with Father when given that discretion; however, Father never visited Allie after she moved in with Grandmother and Father's reasons for failing to visit with Allie were inexcusable; and (3) Father never availed himself of the transportation opportunities that were presented to him and failed to successfully address his transportation issues in the 21 months the case had been pending. The magistrate concluded,

It is unfortunate that in-person visits ceased after placement with grandmother in Columbus. However, [Allie's] best interests were served by that placement as she was unhappy in her group home placement and deserved to be in a family home. Since that placement was made, Father has never participated in the parenting program intended to assist him with development of appropriate parenting of [Allie] and has demonstrated a complete lack of effort to attend supervised visitation with [Allie] as permitted. While Father is focused on his parental rights when asking for [Allie] to be required to visit with him, he fails to demonstrate how [Allie's] best interest are served by being required to visit with him against her wishes. [Allie] has experienced enough trauma over her lifetime, and at her age, she should be given some amount of control over her contact with her parents.

{¶ 14} Father filed objections to the magistrate's decision. On October 13, 2023, the juvenile court overruled Father's objections and adopted the magistrate's decision.

{¶ 15} Father now appeals, raising one assignment of error:

THE TRIAL COURT'S DECISION WHICH IMPOSED ALL THE EXPENSE FOR VISITATION, DID NOT SET A MINIMUM SPECIFIC ORDER, AND LEFT VISITATION TO THE DISCRETION OF THE CHILD WAS AN ABUSE OF DISCRETION, NOT SUPPORTED BY SUFFICIENT EVIDENCE AND CONTRARY TO THE MANIFEST WEIGHT OF THE EVIDENCE.

{¶ 16} Father challenges the juvenile court's visitation order, raising two issues for review.

{¶ 17} In his first issue for review, Father argues that the juvenile court erred by requiring him to bear the costs of traveling to Grandmother's home to visit Allie. Father asserts the court should have ordered Grandmother to pay for some of Father's travel costs because he is indigent and pays child support.

{¶ 18} We are precluded from reviewing this issue. Objections to a magistrate's decision must be "specific and state with particularity all grounds for objection." Juv.R. 40(D)(3)(b)(ii). The failure to file specific objections is treated the same as the failure to file any objections. *In re K.L.F.,* 12th Dist. Butler Nos. CA2020-08-083 and CA2020-08-

084, 2021-Ohio-2290, ¶ 9. Juv.R. 40(D)(3)(b)(iv) provides that "[e]xcept for a claim of plain error, a party shall not assign as error on appeal the court's adoption of any factual finding or legal conclusion * * * unless the party has objected to that finding as required by Juv.R. 40(D)(3)(b)."

{¶ 19} Although Father filed objections to the magistrate's August 15, 2023 decision, he did not specifically raise the issue of travel costs. Rather, Father challenged the magistrate's visitation decision solely on the ground that Allie had sole discretion whether to visit with him. Furthermore, Father does not claim or argue plain error on appeal. "It is well recognized that the failure to draw a trial court's attention to possible error when the error could have been corrected results in a waiver of the issue for purposes of appeal." *K.L.F.* at ¶ 10. Father is therefore precluded from raising this issue on appeal. *Id.*

{¶ 20} In his second issue for review, Father argues the juvenile court erred by ordering that visitation with Father be at Allie's discretion. Father asserts that the court should have set a "minimum schedule of parenting time," such as "one 4-hour visit per month."

{¶ 21} As a noncustodial parent in a dependency action, Father retains residual parental rights and responsibilities, which include "the privilege of reasonable visitation * * * and the responsibility for support." R.C. 2151.011(B)(50) and 2151.353(A)(3)(c); *In re A.S.*, 12th Dist. Warren No. CA2022-11-074, 2023-Ohio-1607. A juvenile court has broad discretion in determining visitation issues, and its decision will not be reversed absent an abuse of discretion. *In re A.J.*, 12th Dist. Butler No. CA2016-09-175, 2017-Ohio-5848, ¶ 30; *In re S.S.*, 8th Dist. Cuyahoga Nos. 110793 and 110795, 2022-Ohio-520 (appellate court's review of a juvenile court's decision regarding a parent's visitation rights in the context of an abuse, neglect, or dependency action is for an abuse of discretion). The

court's primary consideration should always be the best interest of the child. *Bristow v. Bristow*, 12th Dist. Butler No. CA2009-05-139, 2010-Ohio-3469, ¶ 18. To further the child's best interest, the juvenile court has the discretion to limit or restrict visitation rights. *Id.* This includes the power to restrict the time and place of visitation, to determine the conditions under which visitation will take place, and to deny visitation rights altogether if visitation would not be in the best interests of the child. *Id.*

**{¶ 22}** A challenge to the manifest weight of the evidence involves the inclination of the greater amount of credible evidence, offered in a trial, to support one side of the issue rather than the other. *Eastley v. Volkman*, 132 Ohio St.3d 328, 2012-Ohio-2179, ¶ 12. In addressing a manifest weight challenge, "the reviewing court weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether, in resolving conflicts in the evidence, the finder of fact clearly lost its way and created such a manifest miscarriage of justice that the judgment must be reversed and a new trial ordered." *In re A.S.* at ¶ 20.

**{¶ 23}** Upon thoroughly reviewing the record, we find that the juvenile court did not abuse its discretion in ordering that visitation with Father be at Allie's discretion, nor do we find the juvenile court's decision was against the manifest weight of the evidence.

**{¶ 24}** As stated above, a noncustodial parent in a dependency action has residual parental rights, privileges, and responsibilities, including the "privilege of reasonable visitation." R.C. 2151.011(B)(5) and 2151.353(A)(3)(c). However, such residual rights are not absolute and are always subject to the best interest of the child. *See In re S.S.*, 8th Dist. Cuyahoga Nos. 110793 and 110795, 2022-Ohio-520; *Bristow*, 2010-Ohio-3469. Allie is now 17 years old and is deemed mature, intelligent, and able to make her own decisions, and she has demonstrated a willingness to arrange some visits with Father despite her discomfort being around him. Father was absent from Allie's life for 13 years,

has failed to engage in a parenting program intended to assist him with developing appropriate parenting, and has never visited Allie after she moved in with Grandmother. In fact, Father has demonstrated a complete lack of effort to visit with Allie despite the opportunities given to him and instead, blames Grandmother's general failure to financially help him and Allie's meanness and animosity toward him for his failure to visit with Allie. In light of the foregoing, it is in Allie's best interest to have discretion whether to visit with Father. The juvenile court did not err by ordering that Father's visitation with Allie be at Allie's discretion.

{¶ 25} Father's assignment of error is overruled.

{¶ 26} Judgment affirmed.

S. POWELL, P.J., and HENDRICKSON, J., concur.